# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

CRAIG JOHNSON,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Petitioner,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　vs.　　　　　　　　　　　　　　　)　　Case No. 12-0747-CV-W-GAF-P
　　　　　　　　　　　　　　　　　　)
JAMES HURLEY,　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　)
　　　　Respondent.　　　　　　　　)

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Craig Johnson, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on June 11, 2012, seeking to challenge his 2006 convictions and sentences for one count of kidnaping and three counts of domestic assault in the second degree, which were entered in the Circuit Court of Jackson County, Missouri.

The petition raises two grounds for relief, alleging insufficient evidence to sustain the jury's finding of guilty and ineffective assistance of trial counsel for counsel's failure to object to petitioner's physical restraints during trial. Respondent contends that the petition is without merit and should be dismissed.

## SUMMARY OF THE FACTS

The Missouri Court of Appeals summarized the facts as follows:

> Viewed in the light most favorable to the verdict, the evidence at trial established that in July 2003, M.M. resided with Johnson. On or about July 11, 2003, Johnson and M.M. argued, and Johnson restrained M.M. with cargo straps. During the next week, Johnson restrained and assaulted M.M. daily and threatened to kill her if she left the apartment. On July 18, 2003, M.M. left the apartment, but Johnson confronted her on the street where he struck and kicked her multiple times. A passerby stopped his car, and Johnson fled. The passerby took M.M. to a gas station and

> apparently called the police. Kansas City Police Officer Lawrence Pollard arrived at the gas station and took a statement from M.M. Police officers apprehended Johnson and brought him to the gas station where M.M. confirmed his identity, and then M.M. was take to the hospital. Once at the hospital, Detective Janna Eikel took M.M.'s statement.
>
> Johnson was charged with one count of kidnaping and three counts of second-degree domestic assault. After a jury trial, Johnson was found guilty on all four counts. Johnson was sentenced to four concurrent sentences of fifteen years.

(Respondent's Exhibit E, pp. 1-2).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## INSUFFICIENT EVIDENCE

In Ground 1, petitioner claims that there was "insufficient evidence to support the convictions because the case was based on prior unsworn, inconsistent statements of the victim, M.M., to police officers." Respondent's Exhibit E, pg. 1. Review of this claim is extremely deferential to the state courts. Constitutionally sufficient evidence exists to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

On direct appeal, the Missouri Court of Appeals disposed of this claim as follows:

> For his sole point on appeal, Johnson challenges the sufficiency of the evidence as to all four counts. Johnson contends that, because the case was based on M.M.'s prior, unsworn inconsistent statements without corroborating evidence, there was insufficient evidence from which reasonable jurors could find him guilty. M.M. had given statements to Officer Pollard and Detective Eikel that Johnson had assaulted her on July 18, 2003, and throughout the preceding week. M.M. recanted at trial claiming that Johnson had not assaulted her. Instead, she claimed she encountered Johnson walking down the street with another woman holding hands. M.M. testified that she and the woman started fighting and that Johnson tried to break up the fight. At trial, the State presented M.M.'s prior inconsistent statements as substantive evidence pursuant to section 491.074 RSMo 2000.
>
> "In reviewing a challenge to the sufficiency of the evidence, this court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary." *State v. Magee,* 911 S.W.2d 307, 310 (Mo. App. 1995). "In such a review, the role of this court is not to weigh the evidence, but to determine whether there was sufficient evidence from which reasonable jurors could have found the defendant guilty." *Id*. at 311.
>
> Johnson relies on this Court's holding in *State v. Pierce,* 906 S.W.2d 729 (Mo. App. 1995). In *Pierce*, the alleged victim recanted her statutory rape allegations, but a DS worker was permitted to testify at trial about the victim's out-of-court statements. Id. at 731-33. The jury convicted Pierce of statutory rape. Id. at 730. On appeal, the conviction was reversed because the single out-of-court statement was uncorroborated, unreliable, and insufficient to prove Pierce's guilt beyond a reasonable doubt. Id. at 735.
>
> The rule set forth in Pierce is "'an exception to the rule that a prior inconsistent statement can serve as the sole basis for a finding of guilt.'" *State v. Duley,* 219 S.W.3d 842, 844 (Mo. App. 2007) (citation omitted). This exception is only to be applied to its "'unique factual situation.'" *Id*. (citation omitted). The trend has

been to limit the corroboration rule from *Pierce* to the victim's *trial testimony.* *Id.* Since Pierce, this Court has held that "[t]he corroboration rule is applicable only to the victim's trial testimony and not to conflict between the victim's testimony and the victim's out-of-court statements." *State v. Benwire,* 98 S.W.3d 918, 623 N.2 (Mo. App. 2003). *Pierce* does not apply "where corroborating evidence exists to support the prior inconsistent statements upon which the conviction is based." *State v. Archuleta,* 955 S.W.2d 12, 15 (Mo. App. 1997).

In the present case, there was sufficient corroboration of M.M.'s prior inconsistent statements presented by two witnesses and the physical evidence. The facts of the present case are more analogous to the facts of *State v. Porras,* 84 S.W.3d 153 (Mo. App. 2002), where the victim recanted sodomy allegations. *Id.* at 155. In *Porras*, this Court held that, unlike *Pierce*, the testimony was corroborated by at least four witnesses who testified to the victim's out-of-court statements, including the victim's parents, grandparents, and DFS worker. *Id.* at 159-60. This Court held that this corroboration satisfied due process considerations of reliability. *Id.* at 160-61.

In the present case, there were two witnesses that testified to the victim's out-of-court statements. Officer Pollard testified that he was dispatched on an assault in the early morning of July 19, 2003. Officer Pollard testified that M.M. described in detail that she was attacked by Johnson. M.M. gave Officer Pollard a height, weight, and clothing description of Johnson. Officer Pollard testified that M.M. had described other assaults by Johnson of M.M. in the previous seven to eight days. She described to Officer Pollard how Johnson would tie her up with cargo straps and threaten to kill her if she left the apartment. Officer Pollard testified that M.M. described how Johnson would assault her daily, and Officer Pollard observed bruises on M.M. Officer Pollard testified that Johnson was apprehended and brought to the scene where M.M. identified him as her attacker prior to being taken to the hospital.

Detective Eikel testified that she interviewed M.M. at the hospital. Detective Eikel testified that she observed M.M. to be crying and her injuries included a swollen lip and a bloody nose. Detective Eikel testified that M.M. had told her that she resided on and off with Johnson and that he had repeatedly assaulted her over the past week. Detective Eikel states that M.M. has described that Johnson would stick knives in the frames of the doors to keep her from leaving the apartment.

> At trial, the State presented physical evidence that corroborated M.M.'s statements. Detective Blakemore testified that he assisted in serving the search warrant at Johnson's apartment. He testified that they seized cargo straps from the apartment. He also testified that the doorjamb was cracked. Johnson was apprehended in the vicinity of the assault, shortly after it occurred. The physical evidence that M.M. had been assaulted was substantial.
>
> In addition, this Court has held that where there were obvious reasons for the recantation, the effect of the recantations are properly left for the jury. *State v. Griggs*, 999 S.W.2d 235, 244 (Mo. App. 1998). The recantations and the circumstances thereof are for the jury to consider. *Id.* In this case, there are obvious reasons for M.M.'s recantation. M.M. testified at trial that since the incident, she and Johnson had continued their relationship while he was incarcerated and were presently engaged to be married. As such, we reject the argument that M.M.'s recantations required the application of the corroboration rule enunciated in *Pierce*.
>
> We, therefore, affirm the circuit court's judgment.

(Respondent's Exhibit E, pp.2-5).

The resolution of Ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).[2]

Ground 1 is denied.

---

[2] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413, 120 S.Ct. at 1523.

# INEFFECTIVE ASSISTANCE

In ground 2, petitioner contends that his attorney provided ineffective assistance by failing to object to petitoner's physical restraints during trial. In order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland 466 U.S. at 687-88. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

On appeal from his Rule 29.15 post-conviction motion, the Missouri Court of Appeals disposed of this claim as follows:

> To prevail on his claim of ineffective assistance of counsel, Johnson must show that (1) counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and (2) his defense was thereby prejudiced. *Dorsey v. State,* 156 S.W.3d 825, 830 (Mo. App. 2005) (citing *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984)). To satisfy the performance prong, "the movant must establish that counsel's performance fell below an objective standard of reasonableness. There is a strong presumption that counsel provided competent assistance." *Id.* To satisfy the prejudice prong, "the movant must show that there is a 'reasonable probability' that but for counsel's deficient performance, the result

of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*quoting Strickland*, 466 U.S. at 694).

The motion court found that there was no testimony that Johnson's leg restraints were actually visible to the jury. Although sought out by post-conviction counsel, no jurors testified regarding the visibility of the restraints. The motion court found that Johnson failed to prove that he was prejudiced. We agree.

At the evidentiary hearing, Johnson's trial counsel testified that he had no specific recollection of the events of Johnson's trial. Trial counsel state that while he did not have a specific recollection that Johnson was wearing a leg brace at trial, it is customary and, he believed, required by the department of corrections. Trial counsel believed that Johnson has on long pants. Trial counsel stated that if he had known that jurors could see Johnson's restraints, he would have brought it to the court's attention or done something about it. However, he did not recall there being a problem. In fact, counsel stated that none of his clients have ever told him that they were concerned that the jury may see their restraints.

Johnson testified that at trial he was wearing khaki pants over the restraints. Johnson testified that he believed jurors saw the restraints because his pant leg kept rolling up and that he notified trial counsel of the same.

Johnson relies on *Deck v. Missouri*, 544 U.S. 622 (2005), where the United States Supreme Court addressed the problems with shackling defendants at trial. In *Deck*, the defendant was shackled with ***visible*** leg irons, handcuffs and a belly chain. *Id.* at 622. The Court held that the due process clause prohibits the routine use of ***visible*** restraints in the guilt and penalty phases of trial. *Id.* at 633. Such shacking must be justified based on the particular situation. Id.

Unlike *Deck*, here, the restraints used on Johnson were designed to be hidden and not visible to the jury. The plan was for the shackles to be concealed by Johnson's pants. Deck's shackles, in contract, were known to be blatantly visible, which implied that Deck was dangerous and needed to be restrained. Here, Johnson was dressed in plain clothes with restraints hidden under his clothes.

This case is more analogous to *Zink v. State*, 278 S.W.3d 170 (Mo. banc 2009), where the Missouri Supreme Court distinguished

> *Deck*. Like the present case, the defendant in Zink wore a hidden restraint and argued a due process violation as the jury saw him walk with a gait due to restraints. *Id*. at 185. The Supreme Court states the decision in Deck is not authority for this proposition. The Court noted that the law has forbidden the "routine use of *visible* shackles." *Id*. at 186. The Supreme Court noted that the *Deck* holding was limited to restraints that are visible, not covered restraints. *Id*.; *see also Davidson v. State*. 308 S.W.3d 311 (Mo. App. 2010) (no prejudice from trial counsel's failure to object to hidden leg shackles; Deck inapplicable where shackles not visible).
>
> Here, the motion court was unable to establish that any juror saw the shackles or that defense counsel has any awareness that the shackles were visible. The motion court had only an uncorroborated assertion by Johnson that someone could observe the shackles. Johnson fails to demonstrate ineffectiveness of counsel. The trial court's ruling was not clearly erroneous. Point is denied.

(Respondent's Exhibit J, pp. 2-5).

The resolution Ground 2 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[3] Applying the Strickland standard of review to the facts as set forth in the record, the court finds that trial counsel was not ineffective.

Ground 2 is denied.

---

[3] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

/s/ Gary A. Fenner
GARY A. FENNER
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  December 26, 2012.